**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| NORMAN LANCE and JESSICA WITZIGREUTER, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiffs, | **COMPLAINT AND** |
| v. | **DEMAND FOR JURY TRIAL** |
| VOLKSWAGEN GROUP OF AMERICA, INC., | |
| Defendant. | |

Plaintiffs Norman Lance and Jessica Witzigreuter ("Plaintiffs"), individually and on behalf of all others similarly situated, alleges the following against Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"), based where applicable on personal knowledge, information and belief, and the investigation of counsel.

## NATURE OF THE ACTION

1.     This action is about an unprecedented case of intentional fraud perpetrated on consumers and regulators by one of the world's largest auto manufacturers.

2.     Since 2009, over 482,000 diesel Volkswagen and Audi vehicles sold in the United States were sold with "defeat devices," which created the impression of high fuel efficiency, high performance, and extremely low emissions. Defendant marketed vehicles with these defeat devices as "green" and environmentally friendly, when in fact these representations were hollow. Defendant's vehicles possessed none of the promised attributes.

3.     According to the United States Environmental Protection Agency ("EPA"), Volkswagen installed its defeat device on Type EA 189 and EA 288 diesel 2.0 liter turbo engines in the following vehicles: 2009-2015 Volkswagen Jetta; 2009-2015 Volkswagen Beetle; 2009-

2015 Volkswagen Golf; 2014-2015 Volkswagen Passat; and 2009-2015 Audi A3. Additional vehicles and model years may be added to this list as new facts are discovered.

4. Defendant not only intentionally misrepresented the ability of the vehicles to deliver high performance, fuel economy, and low emissions, but Defendant created a way to make it appear to regulators as if the vehicles at issue delivered on this promise.

5. The defeat devices that Defendant designed and installed worked by switching on the full emissions control systems only when the car is undergoing emissions testing. When switched on the defeat device reduced the vehicles' performance, limiting acceleration, torque and fuel efficiency.

6. When the defeat devices were not activated – i.e., when emissions testing was not being performed – the vehicles delivered the promised fuel efficiency and performance at the expense of the emissions claims made by the defendants. During normal operation the vehicles emitted between 10 and 40 times as much pollution into the environment as is allowed under the Clean Air Act and state regulations.

7. Defendant's violations of the Clean Air Act and various state regulations are detailed in a Notice of Violation the EPA issued to Defendant, as well as a letter from the California Air Resources Board ("CARB"), copies of which are attached to this Complaint as Exhibits A and B, respectively.

8. Once the existence of the defeat devices became known, the scandal spread worldwide. The Type EA 189 and EA 288 engines have been installed in approximately 11 million vehicles worldwide, including those sold under Volkswagen's Volkswagen, Audi, Skoda and SEAT brands.

9.      Volkswagen immediately admitted that the subject automobiles contained the defeat device.  At a press conference on Monday, September 22, 2015, the head of Volkswagen's U.S. operations, Michael Horn, stated "[W]orst of all, we were dishonest to our customers.  We totally screwed up."

10.     In addition, Volkswagen announced that it was suspending sales of the subject vehicles in the United States until the defeat devices were removed from the vehicles and the vehicles were actually legal to sell within the United States.

## PARTIES

11.     Plaintiff Norman Lance is a citizen of the State of Illinois, residing in Greenville, Illinois.  He is the owner of a 2010 Volkswagen Jetta TDI.

12.     Plaintiff Jessica Witzigreuter is a citizen of the State of Washington, residing in Edmonds, Washington.  She is the owner of a 2013 Volkswagen Jetta TDI.

13.     Defendant Volkswagen Group of America is a New Jersey corporation with its principal place of business at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171, and Eastern Regional headquarters located in Woodcliff Lakes, New Jersey.

14.     At all relevant times, Volkswagen manufactured, distributed, sold, leased and warranted the vehicles with defeat devices under the Volkswagen and Audi names throughout the United States.  The defeat device, engine, and engine control systems were all designed by Volkswagen or its agents. Volkswagen also developed and distributed its owners' manuals, warranty materials, advertisements and other promotional materials related to the vehicles containing defeat devices.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act ("CAFA").  Plaintiffs and many other members of the

putative class are residents and citizens of states different from the home state of Defendant. Plaintiffs are informed and believe that the amount in controversy in this case, exclusive of interest and costs, exceeds $5,000,000.

16.     Venue is proper pursuant to 28 U.S.C. § 1391 in that Plaintiff Norman purchased his vehicle in this district and a substantial part of the events or omissions giving rise to Plaintiff's individual claims occurred in this district.  In addition, Defendant does substantial business in this judicial district, has received substantial benefit from doing business in this judicial district, and has knowingly engaged in activities direct at consumers in this judicial district.  Furthermore, a significant number of Defendant's vehicles are sold and leased in the State of Illinois, and the wrongful acts alleged herein have affected members of the putative class who live within this district.

17.     The Court has personal jurisdiction over the Defendant because the Defendant has transacted business, maintained substantial contacts through its agent dealerships, directly participate in and/or committed overt acts in furtherance of its illegal conduct in this district vis-à-vis its fraudulent representations to Plaintiff Norman and class members in furtherance of its illegal conduct.  As a result of Defendant's  representations to Plaintiff Norman, he has been injured and the injury occurred within this district.

**DEFENDANT'S MISCONDUCT TOLLS THE STATUTE OF LIMITATIONS**

**A.     Discovery Rule Tolling**

18.     Plaintiffs and members of the proposed Class could not have discovered that Volkswagen concealed and misrepresented the true emissions levels of its vehicles through the use of defeat devices.

19.     Volkswagen's efforts to deceive consumers and regulators were the result of painstaking concealment and fraud with respect to Volkswagen's CleanDiesel engines, engine control systems and defeat devices.

20.     Neither Plaintiffs nor members of the Class could reasonably discovered, or have reason to suspect, that Volkswagen intentionally concealed information within its knowledge from federal and state regulators, Volkswagen's dealerships, and consumers.  Indeed, the whole purpose of the defeat devices was to engage when the vehicles were being tested for exhaust emissions with the intent of concealing the fact that the exhaust emissions actually exceeded amounts allowed by applicable regulations.

21.     Thus, even a reasonable and diligent investigation by consumers could not have discovered that Volkswagen solely possessed information about the existence of its sophisticated emissions fraud scheme.  Plaintiffs and Class members had no way of learning that Volkswagen was flouting applicable federal and state emissions standards as well as consumer law.

**B.      Tolling Due to Fraudulent Concealment**

22.     All applicable statutes of limitation have been tolled by Volkswagen's active fraudulent concealment of the facts alleged in this Complaint.

23.     Rather than disclosing the vehicles' true performance, fuel economy, emissions, and compliance with federal and state emission standards, Volkswagen actively concealed and misrepresented them through the use of defeat devices.

**C.      Estoppel**

24.     Volkswagen was under a continuous duty to disclose to consumers, including Plaintiffs and the other Class members, the facts that it knew about the emissions, fuel economy

and performance of the vehicles equipped with defeat devices, and of those vehicles' inability to comply with federal and state emission standards.

25.     Volkswagen violated this duty and unlawfully circumvented federal and state emission standards through the use of defeat devices, and Volkswagen intentionally misrepresented the ability of the subject vehicles to comply with state and federal law regulating vehicle emissions and clean air.

26.     Volkswagen is therefore estopped from relying on any statutes of limitation defenses in this action.

## FACTUAL BACKGROUND

27.      Defendant designed and sold cars that were designed to, and did, mislead consumers and regulators about the vehicles' emissions, fuel efficiency and performance. Despite touting the "green" benefits of its diesel vehicles, Defendant sold cars that produced pollution up to 40 times higher than advertised, and then intentionally concealed the truth about those cars through a sophisticated scheme involving defeat devices.

**A.     Volkswagen Sells the "Green" Diesel Image to Consumers**

28.     For years, Volkswagen advertised its diesel vehicles as fuel efficient cars with low emissions. Consumers have responded to these advertisements, making Volkswagen the largest seller of diesel passenger vehicles in the United States.

29.     While under 1% of automobiles sold in the U.S. are powered by diesel engines, approximately 23% of those sold by Volkswagen are diesels, with those vehicles making up the bulk of diesel automobile sales in the U.S.

30.     Part of Volkswagen's success owes to the promotion of their diesel cars as "clean" and "green" vehicles.  In fact, "CleanDiesel" is a marketing term used by Volkswagen to market the vehicles at issue in this action.[1]

31.     Volkswagen's website boasts that the Audi A3 TDI and VW Jetta TDI were named the 2010 Green Car of the Year and the 2009 Green Car of the Year, respectively.

32.     Defendant also supported and directed a website to promote its "green" diesel technology, www.clearlybetterdiesel.org, which states that Volkswagen's technology reduces smog and "meets the highest standards in all 50 states, thanks to . . . innovative engine technology that burns cleaner."

33.     In addition to touting the low emissions of the subject vehicles, Volkswagen touted the fuel efficiency of the vehicles, in that they could achieve over 40 miles per gallon of fuel and travel over 800 miles on a tank of fuel.[2]

34.     Further, Volkswagen recently began promoting the performance of its diesel powered automobiles, to overcome the consumer perception that diesel automobiles were slow and sluggish.[3]

**B.     Volkswagen Intentionally Concealed Its Vehicles' Excessive and Illegal Pollution Emissions.**

35.     On September 18, 2015, the EPA issued a Notice of Violation ("NOV") to Volkswagen. The NOV details how Defendant installed sophisticated software in the

---

[1]     An example of a commercial touting how "clean" Volkswagen diesels is available at https://www.youtube.com/watch?v=WNS2nvkjARk and (last visited September 22, 2015).

[2]     Examples of commercials touting the fuel efficiency of Volkswagen diesels are available at https://www.youtube.com/watch?v=a2CNHVXvNRo and https://www.youtube.com/watch?v=wj3if2gRWYE (last visited September 22, 2015).

[3]     An example of such a commercial is available at https://www.youtube.com/watch?v=0VA51xWXZ3g  (last visited September 22, 2015).

Volkswagen and Audi diesel vehicles that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the tests.  At all other times that the vehicle is in operation, the emissions controls are deactivated, permitting pollution to be freely released into the environment at levels that far exceed those allowed by federal and state clean air regulators. This software produced and used by Volkswagen is a "defeat devices" as defined in the Clean Air Act.

36.    Volkswagen programmed the engine control computers in the vehicles with defeat devices to detect when cars are undergoing emissions testing. When testing is occurring, the defeat device alters the vehicle's engine and exhaust systems such that emissions standards are met.  When testing is not being performed the engine control systems operate the vehicle in a way that does not comply with EPA omissions requirements.

37.    Moreover, under normal operating conditions, the engines produce more power and higher fuel efficiency than they would if they complied with EPA emissions requirements.

38.    Because of this software, Defendant's diesel vehicles can seemingly meet emissions standards while emitting nitrogen oxides (NOx) at up to 40 times the standard allowed under federal and state laws and regulations during the normal operation of the vehicles.

39.    The Clean Air Act sets emissions standards for vehicles and requires vehicle manufacturers to certify to the EPA that vehicles sold in the United States meet applicable federal emissions standards. All vehicles sold in the United States must be covered by an EPA-issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified. Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in

unfair competition by manufacturing and selling vehicles with defeat devices that allowed for higher levels of emissions than were certified by the EPA.

**C.    Defendant Charged a Premium For Its "Clean" and "Green" Diesel Technology**

40.    Volkswagen charged substantial premiums for vehicles equipped with defeat devices.

41.    The table below sets forth the price premium for each comparable base, mid-level, and premium trim for each affected model:

| Model | Base | Mid-level | Premium |
|-------|------|-----------|---------|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

**D.    Volkswagen's Misconduct Has Injured Class Members**

42.    Despite the EPA ordering Defendant to recall vehicles equipped with defeat devices, purchasers of the subject vehicles have and will continue to suffer significant harm. First, the only way for Volkswagen to make the vehicles comply with emissions standards will be to significantly reduce the vehicles' horsepower, torque and fuel efficiency. Thus, if made EPA compliant, Class members will suffer actual harm and damages because their vehicles will no longer perform as advertised and warranted.

43.    Second, Class members' vehicles will suffer from a significant diminution value by being made EPA compliant, because not only did Class members overpay for their vehicles, but they will be forced to pay much more to fuel their less fuel efficient vehicles.

44.     Owners of vehicles equipped with defeat devices have suffered losses of money or property because of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failures to disclose the true emissions of the vehicles.

45.     Had Plaintiffs and the Class members known of the defeat device at the time they purchased or leased their vehicles, they would not have purchased or leased their vehicles, or they would have paid less than they did. Even if Volkswagen recalls the defeat device vehicles and degrades the engine performance of the vehicles to make them compliant with EPA standards, Plaintiffs and Class members will be forced to spend more on fuel and will not receive the advertised performance of their vehicles. The recalled vehicles will be worth less in the used marketplace because of their decrease in performance and efficiency, which means that owners of these vehicles will not be able to recoup the expected value of these vehicles in the future.

## PLAINTIFFS' FACTS

**Plaintiff Norman Lance**

46.     Norman Lance is a citizen and resident of the State of Illinois.  He is the owner of a 2010 Volkswagen Jetta.

47.     Lance purchased the vehicle reasonably relying on Volkswagen's representations that the vehicle was environmentally friendly.

48.     Lance would not have purchased the vehicle if he had known that the emissions were much higher than advertised and the engine was not "clean."   Lance is concerned that if he repairs the vehicle it will cost him more for fuel and he will experienced degraded performance. Like other reasonable consumers, he is also concerned that regardless of whether or not the vehicle repaired, it will lose value.  As a result, Lance has lost the benefit of the bargain in that

Case 3:15-cv-01058-NJR-SCW   Document 1   Filed 09/23/15   Page 11 of 25   Page ID #11

he would have paid less for the vehicle, or would not have purchased it at all had he known of Volkswagen's conduct.

**Jessica Witzigreuter**

49.     Plaintiff Jessica Witzigreuter is a citizen and resident of the State of Washington. She owns a 2013 Volkswagen Jetta TDI.

50.     Like other reasonable consumers, Plaintiff Witzigreuter purchased the vehicle based upon Volkswagen's representations concerning the vehicle's gas mileage.

51.     Plaintiff Witzigreuter recently attempted to trade-in her vehicle; however, due to Volkswagen's allegedly fraudulent statements, she was unable to trade in the vehicle for what it would have been worth absent Volkswagen's fraud.

52.     As a result of Volkswagen's actions, she has lost the benefit of the bargain in that she would have either not purchased or paid substantially less for the vehicle had she known of the true nature of Volkswagen's conduct.

**CLASS ACTION ALLEGATIONS**

53.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who are current or former owners and/or lessees of a Volkswagen or Audi vehicle with a Type EA 189 or EA 288 diesel 2.0 liter turbo engine, including, without limitation: 2009-2015 Volkswagen Jetta; 2009-2015 Volkswagen Beetle; 2009-2015 Volkswagen Golf; 2013-2015 Volkswagen Passat; and 2009-2015 Audi A3.

54.     Excluded from the Class are individuals who have personal injury claims resulting from the defeat device in the Class vehicles. Also excluded from the Class are Volkswagen and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and

his or her immediate family. Plaintiffs reserve the right to revise the Class definition based upon information learned through discovery.

55. The class is readily ascertainable based upon objective criteria.

56. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same proof.

57. This action has been brought and may properly be maintained on behalf of the class proposed herein under Federal Rule of Civil Procedure 23.

58. **Numerosity**. The members of the class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs believe that there not less than hundreds of thousands of members of the class, the precise number of Class member is unknown at this time, but may be ascertained from Volkswagen's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, or published notice.

59. **Commonality**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including:

   a. Whether Volkswagen engaged in the conduct alleged herein;

   b. Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed defeat device vehicles into the stream of commerce in the United States;

   c. Whether the CleanDiesel engine system in the subject vehicles contains a defect in that it does not comply with EPA requirements;

d.     Whether the CleanDiesel engine systems in the subject vehicles can be made to comply with EPA standards without substantially degrading the performance or efficiency of the vehicles;

e.     Whether Volkswagen knew about the defeat device and, if so, how long it possessed this knowledge;

f.     Whether Volkswagen designed, manufactured, and distributed the subject vehicles with a defeat device;

g.     Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h.     Whether Plaintiffs and the other Class members overpaid for their vehicles;

i.     Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or other injunctive relief; and

j.     Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

60.    **Typicality**. Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

61.    **Adequacy**. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seeks to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, and

13

Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

62. **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2)**. Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

63. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for members of the Class to individually seek redress for Volkswagen's wrongful conduct.

64. Should individual Class Members be required to bring separate actions, this Court and/or courts throughout the United States would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Breach of Express Warranty**
**Plaintiffs, Individually, and on Behalf of the Class**

65.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

66.     By advertising the "green" and "clean" qualities of its diesel engines, Defendant expressly warranted to purchasers of the subject vehicles that the vehicles at least complied with all applicable laws and regulations relating to exhaust emissions.  Stated differently, it would be impossible for an automobile to be "green" if it emitted more pollutants than were allowed by applicable environmental laws and regulations.

67.     Such statements became the basis of the bargain for Plaintiffs and other purchasers of the vehicles because such statements are among the facts a reasonable consumer would consider to be material in the purchase of a vehicle.

68.     In fact, in ordinary driving conditions, the subject vehicles did not comply with applicable environmental regulations, emitting between 10 and 40 times the amount of pollutants allowed.  As such, it was unlawful for Defendant to sell the vehicles to the public.

69.     In addition, Defendant stated that the vehicles achieved certain a fuel efficiency in terms of miles per gallon of fuel when tested in accordance with applicable EPA regulations. Those statements created an express warranty that, under EPA test conditions, the vehicle achieved the stated fuel efficiency for purposes of making apples-to-apples comparisons with other vehicles.

70.     Testing under EPA regulations presupposes that the vehicles comply with all laws and regulations applicable to automobiles, including environmental regulations.

71.     In fact, had the subject vehicles been tested in accordance with EPA fuel efficiency standards while also complying with pollution regulations, they would have achieved significantly lower fuel efficiency than was stated on the EPA mileage sticker on the vehicle.

72.     As a result of the foregoing breaches of express warranty, Plaintiffs and other members of the Class have been damaged in that they purchased a vehicle that was unlawful to have been sold in the first instance, and, even if lawfully sold, was less valuable than what they paid for the vehicles because the vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**Plaintiffs, Individually, and on Behalf of the Class**

73.     Plaintiffs repeat the allegations set forth above as if fully set forth herein.

74.     Section 2-314 of the Uniform Commercial Code provides that, unless disclaimed, there is an implied warranty of merchantability with respect to the goods being purchased.

75.     Among the warranties included within the implied warranty of merchantability is that the goods would pass without objection in the trade under the contract description.

76.     For the reasons set forth above, the subject vehicles would not pass without objection in the trade because the retail sale by the manufacturer of a vehicle that contains a defeat device is unlawful.

77.     As a result of the foregoing breaches of warranty, Plaintiffs and other members of the Class have been damaged in that they purchased a vehicle that was unlawful to have been sold in the first instance, and, even if lawfully sold, was less valuable than what they paid for the vehicles because the vehicles do not comply with applicable environmental regulations and cost

more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

### THIRD CLAIM FOR RELIEF
**Magnuson-Moss Act (15 U.S.C. §§ 2301, *et seq.*) – Implied Warranty
Plaintiffs, Individually, and on Behalf of the Class**

78.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

79.     The subject vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

80.     Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). They are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

81.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

82.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

83.     Defendant provided Plaintiffs and the other Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).   As a part of the implied warranty of merchantability, Defendant warranted that the subject vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

84.     Defendant breached these implied warranties, as described in more detail above, and are therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

85.     Any efforts to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Class Vehicles is null and void.

86.     Plaintiffs and the other Class members have had sufficient direct dealings with either Defendant or its agents (dealerships) to establish privity of contract.

87.     Nonetheless, privity is not required here because Plaintiffs and other Class members are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of the implied warranties. The dealers were not intended to be the ultimate consumers of the subject vehicles and have no rights under the warranty agreements provided with the subject vehicles; the warranty agreements were designed for and intended to benefit consumers.

88.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give the Vehicle Manufacturer Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

89.     The amount in controversy of Plaintiffs' individual claims meet or exceed the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiff, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in value of their vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover

a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

90.    Further, Plaintiffs and the Class are also entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**Plaintiffs, Individually, and on Behalf of the Class**

91.    Plaintiffs repeat the foregoing allegations as if fully set forth herein, and in the alternative to warranty-based claims.

92.    Defendant has been unjustly enriched in that it intentionally sold vehicles with defeat devices which were intended to mask the fact that the subject vehicles did not comply with applicable automobile exhaust regulations and, in fact, emitted between 10 and 40 times the pollutant allowed by those regulations.

93.    When purchasing their vehicles, Plaintiffs and other Class members reasonably believed that the subject vehicles complied with applicable environmental regulations and, if properly tested in accordance with EPA mileage standards, would achieve for comparison purposes the mileage stated on the window sticker of the vehicles.

94.    Plaintiffs and other Class members got less than what they paid for in that the subject vehicles did not comply with applicable environmental regulations, nor was the EPA mileage stated on the sticker usable for comparison purposes for other vehicles.

95.    The foregoing did not occur by happenstance or conditions out of Defendant's control.   In fact, the vehicles were deliberately designed to comply with environmental

regulations only when being tested and were known and intended by Defendant to not comply with applicable regulations under ordinary driving conditions.

## FIFTH CLAIM FOR RELIEF
### Violations of State Consumer Protection Acts
### Plaintiffs, Individually, and on Behalf of the Class

96.     Plaintiffs, on behalf of themselves and the Class, hereby re-allege the paragraphs above as if fully set forth herein.

97.     The Illinois Consumer Fraud Act prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of trade or commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

98.     Similarly, the State of Washington has adopted a statute making "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . unlawful."  RCW 19.86.020.

99.     Other states across the Country have enacted substantially similar consumer protection statutes, which require the same or similar showings of proof and proscribe the unlawful conduct described herein.[4]

---

[4] *See, e.g.,* Alaska Stat. § 45.50.471, *et seq.*; Ark. Code § 4-88-101, *et seq.*; Colo. Rev. Stat. § 6-1-105, *et seq.*; Conn. Gen. Stat. § 42-110b, *et seq.*; 6 Del. Code § 2511, *et seq.*; D.C. Code § 28-3901, *et seq.*; Fla. Stat. § 501.201, *et seq.*; Ga. Code Ann. § 10-1-393, *et seq.* and § 10-1-370 *et seq.*; Haw. Rev. Stat. § 480, *et seq.*; Idaho Code § 48-601, *et seq.*, Kan. Stat. § 50-623, *et seq.*; Ky. Rev. Stat. § 367.110, *et seq.*, La. Rev. Stat. § 51:1401, *et seq.*; M.G.L. c. 93A, *et seq.*; Me. Rev. Stat. Ann. tit. 5, § 205-A, *et seq.*; Md. Com. Law Code § 13-101, *et seq.*; Mich. Stat. § 445.901, *et seq.*; Minn. Stat. § 8.31, *et seq.*; Mo. Rev. Stat. § 407.010, *et seq.*; Neb. Rev. Stat. § 59-1601, *et seq.*; Nev. Rev. Stat. § 598.0903, *et seq.*; N.H. Rev. Stat. § 358-A:1, *et seq.*; N.J. Rev. Stat. § 56:8-1, *et seq.*; N.M. Stat. § 57-12-1, *et seq.*; N.Y. Gen. Bus. Law § 349 *et seq.*; N.D. Cent. Code § 51-15-01, *et seq.*; Ohio Rev. Code Sec. 4165.01 *et seq.*, Okla. Stat. 15 § 751, *et seq.*; Or. Rev. Stat. § 646.605, *et seq.*; R.I. Gen. Laws. § 6-13.1-1, *et seq.*; S.C. Code Laws § 39-5-10, *et seq.*; S.D. Code Laws § 37-24-1, *et seq.*; Tex. Bus. & Com. Code § 17.45, *et seq.*; 9 Vt. § 2451, *et seq.*, Va. Code § 59.1-196, *et seq.*; W. Va. Code § 46A-6-101, *et seq.*; Wis. Stat. Ann. § 100.18, *et seq.*

100.   Volkswagen participated in misleading, false or deceptive acts that violated the CFA. Volkswagen knows the Class Vehicles are defective and has known of the defect dating back to when it developed, manufactured, marketed and sold the Class Vehicles.

101.   Nonetheless, Volkswagen concealed and continues to conceal its knowledge of the defect from consumers, including when it sold the Class Vehicles in this case.

102.   No reasonable consumer would have knowingly bought or leased a Class Vehicle if that consumer had known it was manufactured and distributed with the defect.

103.   Volkswagen's intentional misrepresentations, omissions and concealments of material fact constitute unfair and/or deceptive practices in violation of the consumer protection statutes.

104.   Plaintiffs and class members suffered injury-in-fact as a direct result of Volkswagen's violations of the consumer protection statutes in that they have purchased or leased Class Vehicles which will have to be repaired or replaced.

105.   Had Volkswagen disclosed the true quality and defective nature of the Class Vehicles, Plaintiffs would not have purchased the Class Vehicles or would have paid substantially less for them.

106.   As a direct and proximate result of Volkswagen's violation of the consumer protection statutes, Plaintiffs and the class members were damaged..

## SIXTH CLAIM FOR RELIEF
### Illinois Uniform Deceptive Trade Practices Act ("Illinois DTPA"), 815 ILCS 510/1
### Plaintiff Norman Lance, Individually, and on Behalf of Class Members within Illinois

107.   Plaintiff Norman Lance, on behalf of himself and Illinois class members, hereby re-alleges the paragraphs above as if fully set forth herein.

108.    Under the Illinois DTPA, 815 ILCS 510/2 provides in pertinent part that a "person engages in a deceptive trade practice when, in the course of his or her business, vocation or occupation," the person does any of the following: (1) represents that goods or services have characteristics that they do not have; (2) represents that goods or services are of a particular standard, quality, or grade if they are of another; or (3) engages in any other conduct which creates a likelihood of confusion or misunderstanding.

109.    Volkswagen is a "person" within the meaning of 815 ILCS 510/1(5).

110.    Volkswagen's actions, as alleged herein, constitute deceptive, unfair, fraudulent, and unlawful practices committed in violation of 815 ILCS 510/1, *et seq.*

111.    All of the conduct alleged herein occurred in the course of Volkswagen's business and was part of a pattern or generalized course of conduct.

112.    Had Volkswagen disclosed the true quality and nature of the Class Vehicles, Plaintiff Lance and the Illinois class members would not have purchased the Class Vehicles or would have paid substantially less for them.

113.    Volkswagen's deceptive, unfair, fraudulent and unlawful conduct alleged herein was designed to induce and did induce Plaintiff Lance and the Illinois class members to purchase the Class Vehicles.

114.    Defendant, in their communications with and disclosures to the Illinois members of the Class, intentionally concealed or otherwise failed to disclose that the subject vehicles included a software program designed to cheat emissions testing, and that the true emissions of those vehicles here far higher than claimed.

115.    The Illinois members of the Class reasonably expected that the subject vehicles complied with the represented and claimed emissions both prior to and at the time of purchase,

and reasonably expected that Defendant did not use software or any other device or system to cheat emissions testing. These representations and affirmations of fact made by Defendant, and the facts concealed or failed to disclose are material facts that were likely to deceive reasonable consumers, and that reasonable consumers would, and did, rely upon in deciding whether or not to purchase or lease a subject. Defendant intended for consumers, like the Illinois  members of the Class and Class Members to rely on these material facts.

116.    Defendant had exclusive knowledge that the subject vehicles had and have the defects set forth above, facts which were unknown to the Illinois members of the Class. Due to Defendant's exclusive knowledge of these material facts, it gave rise to a duty to disclose these facts. Defendant failed to disclose these material facts.

117.    The injury to consumers by this conduct greatly outweighs any alleged countervailing benefits to consumers or competition under all circumstances. There is a strong public interest in reducing emission levels, as well as truthfully advertising emission levels.

118.    Had the Illinois members of the Class known about Defendant's use of the software device to cheat the emissions test, and/or that the subject vehicles did not comply with Defendant's advertised emissions and did not operate as advertised, they would not have purchased and used the subject vehicles.

119.    As a direct and proximate result of Volkswagen's violation of the Illinois DTPA, Plaintiff Lance and the Illinois class members were damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class respectfully request that the Court enter judgment in his favor and against Volkswagen, as follows:

A.      Certification of the proposed Class, including appointment of Plaintiffs' counsel as Class Counsel and Plaintiffs as representatives of the Class;

B.      An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in the Complaint.

C.      Injunctive relief in the form of a recall or replacement program;

D.      Costs, restitution, damages, and disgorgement in an amount to be determined at trial;

E.      Revocation of acceptance;

F.      Damages under the Magnuson-Moss Warranty Act;

G.      For treble- or punitive damages as permitted by law;

H.      An order requiring Volkswagen to pay both pre- and post-judgment interests on any amounts awarded;

I.      An award of costs and attorneys' fees; and

J.      Such other or further relief as may be appropriate.

### <u>DEMAND FOR JURY TRIAL</u>

The undersigned hereby demands a trial by jury as to all issues so triable.

Dated: September 23, 2015

/s/ Amy E. Keller
Edward A. Wallace
Amy E. Keller
Tyler J. Story
**WEXLER WALLACE LLP**
55 West Monroe Street
Suite 3300
Chicago, Illinois 60603
Tel.    312.346.2222
Fax     312.346.0022
eaw@wexlerwallace.com
aek@wexlerwallace.com
tjs@wexlerwallace.com

Gregory F. Coleman
**GREG COLEMAN LAW PC**
800 South Gay Street
Suite 1100
Knoxville, Tennessee 37929
Tel.     865.247.0080
Fax      865.522.0049
greg@gregcolemanlaw.com

William A. Kershaw
Ian J. Barlow
**KERSHAW, CUTTER & TALLEY PC**
401 Watt Ave.
Sacramento, CA 95864
Tel. 916.448.9800
Fax 916.669.4499
bill@kctlegal.com
ian@kctlegal.com

*Attorneys for Plaintiffs and the Putative Class*